UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| DENA GREEN, | ) |
| Plaintiff, | ) Case No. EDCV 10-01062 AJW |
| v. | ) MEMORANDUM OF DECISION |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff filed an SSI benefits application on April 6, 2007. She alleged that she had been disabled since June 1, 2003 due to panic attacks, anxiety, problems of the shoulder, neck, hip, and upper back; osteoporosis, and spine disease, both discogenic and degenerative. [JS 2]. In a July 1, 2009 written hearing decision that constitutes the Commissioner's final decision in this matter, an administrative law judge (the "ALJ") concluded that plaintiff was not disabled. [Administrative Record ("AR") 10-18]. The ALJ found that plaintiff had severe impairments consisting of osteoporosis and disorder of the thoracic and lumbar

spine, but that she retained the residual functional capacity ("RFC") to perform light work that involved no more than frequent stair-climbing, balancing, bending, kneeling, or crawling, and no more than occasional stooping, crouching, or climbing of ladders and ropes. [AR 15]. The ALJ concluded that plaintiff was not disabled because her RFC did not preclude her from performing work available in significant numbers in the national economy. [AR 17-18].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Lay witness's statements**

Plaintiff contends that the ALJ articulated legally insufficient reasons for rejecting statements made by plaintiff's daughter Brittany Brown ("Brown") in a disability report. [See JS 3-9].

Plaintiff's disability reports and testimony indicate that when she filed her application for SSI benefits, plaintiff and her two children, Brown, aged 18, and a son, aged 15, lived with plaintiff's parents in their home. Plaintiff said that she rented a room from her parents at $375 a month. Plaintiff said that her only income consisted of $555 a month in Aid to Families with Dependent Children ("AFDC"), and that she received food stamps and Medi-Cal benefits in conjunction with her AFDC benefits. Plaintiff said that had been receiving AFDC benefits continuously since 1996, and that her ex-husband had never paid support.

Plaintiff acknowledged that in order to receive AFDC benefits, she either had to work or get a doctor's note excusing her from working. Plaintiff testified that she had last worked in the late 1980s, before her daughter was born in 1989. She said that she had attended job training for about nine months through CalWorks, but that her back started to hurt, so she obtained a doctor's note excusing her from completing the program. Her doctor had exempted her from working for purposes of obtaining her AFDC benefits since approximately 2002. Plaintiff acknowledged that her AFDC benefits would end about two months after the hearing, when her son turned 18. [See AR 107-108, 119-121, 160-163, 418-433, 435-437; see also AR 139-140].

On November 15, 2007, Brown noted on a disability report ("Third Party Function Report") that she and her mother "spend all our time together, watch t.v." [AR 168]. Brown's disability report indicates that

> on a daily basis, [plaintiff] watched TV, talked on the phone[,] and went to the store. She took care of her son and had family members help with cooking and laundry. [Plaintiff] cannot work due to a back injury received in a car accident [in 1998]. She has a hard time raising her arms. She cooked and prepared sandwiches and frozen meals, did laundry and dishes and dishes. She visits with friends. She is able to pay attention but cannot handle stress due to panic attacks. She [had worn] a shoulder brace for about one year.

[JS 5; see AR 16-17, 114, 168-175].

The ALJ also noted that plaintiff's friend, Clara Nelson, completed a Third Party Function Report stating that plaintiff "walked her children to the bus and did light housekeeping, watched TV[,] and read. [Plaintiff] cleans house, waters the lawn[,] and does laundry. She shops for food and clothes." [AR 16; see AR 139-146].

While the ALJ cannot disregard lay testimony regarding a claimant's ability to work without comment, the ALJ may reject such testimony by providing "reasons that are germane to each witness." Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (quoting Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)). Germane reasons for rejecting a lay witness's testimony include inconsistencies between that testimony and the claimant's presentation to treating physicians or the claimant's activities, and the claimant's failure to participate in prescribed treatment. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008); Greger, 464 F.3d at 971; Bayliss, 427 F.3d at 1218.

The ALJ indicated that he found "the following credibility factors" to be "particularly applicable"

to his finding that Brown's statements were not fully credible:

> whether and to what extent a person may have a pecuniary interest in the outcome of the hearing; whether and to what extent the evidence may be colored by friendship or kinship; whether and to what extent a person's evidence is inconsistent with or contradicted by prior statements or other evidence in the record.

[AR 16]. Plaintiff argues that the ALJ arbitrarily rejected Brown's testimony and did not adequately explain how he applied these factors to Brown's testimony.

The ALJ's interpretation of Brown's disability report must be upheld if it "is supported by inferences reasonably drawn from the record . . . ." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir.2004); see Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) (explaining that the ALJ need not recite "magic words," and that a reviewing court may draw inferences relevant to the ALJ's analysis of the evidence "if those inferences are there to be drawn"). Drawing reasonable inferences from the ALJ's decision and from the record as a whole, the ALJ provided germane reasons for his rejection of Brown's disability report.

The ALJ implicitly concluded that Brown's report was inconsistent with that of plaintiff's friend Clara Nelson, a more disinterested witness who portrayed plaintiff as having fewer functional limitations and a relatively normal range of daily activities. [AR 16, 139-146]. The ALJ also considered Brown's family ties and pecuniary motives, and the record supports his conclusion that those factors cast doubt on her credibility. In April 2007, when plaintiff applied for SSI benefits, Brown was still living with her mother and brother in her grandparents' home. Brown apparently continued to reside there in November 2007, when she completed the third party function report and said that she spent "all [her] time" with her mother. [AR 168]. Brown was born in 1989 and had turned 18 by the time her mother filed her April 2007 application for SSI benefits. [AR 109, 436]. Plaintiff's AFDC benefits would have been reduced when Brown turned 18. The ALJ pointed out that plaintiff had been dependent on AFDC benefits since 1996, and that she was facing the complete loss of those benefits on her son's upcoming 18th birthday. The ALJ permissibly inferred that the timing of plaintiff's SSI benefits application, filed several years after her alleged onset of disability, could have been influenced by the approaching termination of the AFDC benefits she had used to support herself and her children for the past 15 years. [See AR 16-17].

Standing alone, a claimant's financial motivation for obtaining benefits is not a valid reason for discrediting the testimony of the claimant or family members. See Ratto v. Sec'y, Dept. of Health & Human Servs., 839 F.Supp. 1415, 1428-1429 (D. Or. 1993) ("If the desire or expectation of obtaining benefits were by itself sufficient to discredit a claimant's testimony, then no claimant (or their spouse, or friends, or family) would ever be found credible."). On the other hand, an ALJ is not required to ignore evidence suggesting that the testimony of a claimant or other witnesses is motivated by financial reasons independent of any legitimate claim of entitlement to benefits. See Gaddis v. Chater, 76 F.3d 893, 896 (8th Cir. 1996) (holding that there was a "strong element of secondary gain in this case" justifying the ALJ's negative credibility finding where the claimant sued his employer only after private benefits were terminated and said he planned to work only until his lawsuit settled). The record supports the inference that plaintiff and Brown had specific pecuniary and familial motives independent of any legitimate claim of entitlement by plaintiff that undermine the reliability of Brown's disability report. Cf. Greger, 464 F.3d at 972 (holding that an ALJ permissibly rejected the claimant's ex-girlfriend's testimony because she maintained a "close relationship" with the claimant and "was possibly influenced by her desire to help him") (internal quotation marks and alteration omitted).

The ALJ also noted that the Commissioner's consultative internist, Dr. Mao H. Hung, considered plaintiff's subjective allegations of pain and functional limitations, such as persistent back pain and temporary "paralysis" of both legs, which were similar to the symptoms described by plaintiff and Brown in their disability reports. Dr. Hung found some abnormalities on physical examination, notably range of motion limitations and tenderness to palpation in the back, and a positive straight-leg raising test indicative of back pain. However, plaintiff's gait, upper extremities, muscle strength, and sensory testing were normal. Dr. Hung diagnosed herniated disc of the thoracic and lumbar spine and history of auto accident. He opined that plaintiff could perform light work. [AR 17, 384-385]. To the extent Brown portrayed plaintiff as more functionally limited than reflected in Dr. Hung's examination findings and medical opinion, that inconsistency was a germane reason for rejecting the more severe limitations described by Brown. Bayliss, 427 F.3d at 1218 (holding that the ALJ permissibly rejected lay testimony that was inconsistent with the medical evidence). The ALJ provided germane reasons for his evaluation of Brown's disability report.

**Treating source opinions**

Plaintiff contends that the ALJ did not properly consider the treating physician's opinion and did not properly develop the record. [See JS 9-24].

The record contains a series of "Authorization to Release Medical Information" ("Authorization") forms for use by the county welfare department in soliciting information from plaintiff's healthcare providers to evaluate her "eligibility for public assistance" and "determine his/her work assignment." [AR 245, 402, 404, 408]. The record also contains a series of "Medical Report" forms used by the county welfare department to determine whether or not plaintiff was "incapacitated," which "means that a physical or mental disability prevents or substantially reduces the patient's ability to engage in full-time work, training, or provide necessary care for his/her child(ren)." [AR 403, 405-407]. The forms were signed by either Dr. Albano or Dr. Ramos, both of whom were plaintiff's treating physicians at LaSalle Medical Associates. [See AR 420-425].

The Authorization forms indicate that: (1) plaintiff had "a medically verifiable condition that would limit [her] from performing certain tasks"; (2) the date of onset of the condition was February 2003; (3) the condition is "chronic"; (4) plaintiff is "actively seeking treatment"; (5) plaintiff is unable to work; (6) plaintiff has "limitation[s] that affect [her] ability to work or participate in education or training"; (7) plaintiff's condition does not "prevent [her] from providing care the child(ren) in the home"; (8) plaintiff's condition does not "require someone to be in the home to care for [her]." The forms were signed in February 2005, April 2006, March 2007, and March 2009. [AR 245, 402, 404, 408].

"Medical Report" forms signed in July 2004, September 2004, and December 2004 indicate that: (1) plaintiff was "'incapacitated' from work"; (2) she had diagnoses of "chronic back pain" and "osteoarthritis, spine"; (3) the date of onset of incapacity was February 2003; (4) the expected duration of incapacity was from July 2004 through February 2005; (5) the incapacity did not "require someone to be in the home to care for [her]"; and (6) plaintiff's "physical/mental ability is substantially reduced by" chronic back pain and decreased mobility. [AR 405-407]. A "Medical Report" form signed in February 2006 said that plaintiff was incapacitated by chronic low back pain and status post "D.C. & laparoscopy," and that her "physical/mental ability is substantially reduced by" low back pain and abdominal pain. [AR 403].

The ALJ must provide clear and convincing reasons, supported by substantial evidence in the record,

for rejecting an uncontroverted treating source opinion. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson, 359 F.3d at 1195; Tonapetyan v. Halter, 242 F.3d 1144, 1148-1149 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

The opinions of Drs. Albano and Ramos were controverted by the opinion of the consultative examining internist, Dr. Hung, that plaintiff could perform light work. Therefore, the ALJ was required to articulate specific, legitimate reasons supported by substantial evidence for rejecting the opinions reflected in the Authorization and Medical Release forms.[1]

The ALJ articulated legally sufficient reasons for rejecting the treating source disability opinions. First, he noted that "[t]he conclusionary forms are not supported by or accompanied by any objective evidence." [AR 17]. See Tonapetyan, 242 F.3d at 1148 ("When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings.") (citing Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992)). The Authorization forms did not identify plaintiff's allegedly disabling impairment or condition and did not list any objective findings or clinical data. [AR 245, 402, 404, 408]. The Medical Reports were only slightly more enlightening. Three of the those reports said that plaintiff was incapacitated by chronic back pain and osteoarthritis. [AR 405-407]. A diagnosis of osteoarthritis does not establish the existence of a severe or disabling degree of pain or functional limitation. Sample v. Schweiker, 694 F.2d 639, 642-643 (9th Cir. 1982) (noting that the existence of a diagnosed emotional disorder "is not per se disabling," and that "there must be proof of the impairment's disabling severity"). No objective findings or clinical data—such as imaging reports, laboratory results, or physical examination findings—were referenced to support the diagnosis of osteoarthritis or to corroborate the presence or severity of chronic back pain. The fourth Medical Report omitted the diagnosis of osteoarthritis altogether and instead indicated that plaintiff was incapacitated by chronic low back pain and status post "D.C. & laparoscopy," which are references to surgical procedures. The underlying condition leading to use of those procedures is not identified; however, a post-operative report in the record lists

---

[1] The ALJ did not mention each form, but he mentioned two of them specifically and also cited Exhibits 17F and 18F [AR 402-408], which contain all of the forms except the Authorization form at AR 245. Because the forms are all similar, the ALJ's summary was adequate.

diagnoses of abnormal bleeding, adhesions, and endometriosis. [AR 282].

Second, the ALJ observed that the Authorization and Medical Report forms did not describe any specific limitations on plaintiff's ability to perform work activity. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (holding that the ALJ properly rejected a treating physician's "meager" opinion that was "conclusory and unsubstantiated by relevant medical documentation" and that failed to explain how the claimant's mental impairment affected her ability to work). The Authorization forms indicated that plaintiff's unidentified condition "limit[ed] or prevent[ed her] from performing certain tasks," but said nothing about what specific limitations plaintiff had or how she was impaired in the performance of any tasks. [AR 245, 402, 406, 408]. The Medical Report forms said that plaintiff's "physical/mental ability is substantially reduced by" chronic back pain and decreased mobility, or by low back pain and abdominal pain. [AR 403, 405-407]. Those vague, broad assertions are insufficient to establish the specific nature or extent of any restriction on plaintiff's ability to perform work-related activities. See Morgan, 169 F.3d at 600 (holding that the ALJ permissibly rejected an examining psychologist's report that did not show how the claimant's symptoms translated into specific functional deficits which precluded work activity); cf. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)(defining medical opinions as statements from "acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis, and prognosis, what you can still do despite impairment(s), and your physical and mental restrictions.").

The ALJ's reasons for rejecting the treating source opinions were specific, legitimate, and supported by substantial evidence. Plaintiff also contends, however, that the ALJ erred in failing to develop the record to ascertain the bases for the treating physicians' opinions, and that the ALJ's duty was heightened because plaintiff was unrepresented during the hearing.

The ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered," even where, as here, "the claimant is represented by counsel." Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003)(quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)); see Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). A claimant, however, retains the burden of proving that he is disabled. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). The ALJ's "duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow

for proper evaluation of the evidence." Mayes, 276 F.3d at 459-460 (rejecting the argument that the ALJ breached his duty to develop the record as an impermissible attempt to shift the burden of proving disability away from the claimant).

The ALJ's duty to develop the record was not triggered because the evidence was not ambiguous and the record was not inadequate to allow a proper evaluation of the evidence. Dr. Hung's consultative examining opinion constitutes substantial evidence supporting the ALJ's finding that plaintiff can perform a range of light work. Plaintiff's treatment records show that plaintiff received physical therapy, chiropractic treatment, and medication for back pain. [AR 195-198, 200-202, 204-208, 210-212, 214-240, 242-251, 252-278, 283-289, 303-356, 359-361, 392-295, 412]. Imaging tests were unremarkable. [AR 205 (April 2004 note referring to normal cervical spine x-rays and a normal lumbar spine MRI); AR 284 (March 2004 normal lumbar spine MRI); AR 277 (February 2003 lumbar spine x-ray showing mild degenerative changes and accentuation of the lordotic curve)]. A January 2004 neurological consultation was grossly normal, with a diagnosis of neck pain and back strain. [AR 287-289]. A bone scan in March 2007 showed osteopenia; plaintiff testified that she was prescribed bone-strengthening medication. [AR 423-424]. The record contains many progress reports from LaSalle Medical Associates, but those reports are generally brief and contain few identifiable findings or documented abnormalities. [See AR 301-366]. Plaintiff does not suggest that the record is missing any existing relevant medical evidence. Accordingly, her contention lacks merit.

**Conclusion**

The Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly, the Commissioner's decision is **affirmed.**

**IT IS SO ORDERED.**

June 30, 2011

_____
ANDREW J. WISTRICH
United States Magistrate Judge